IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SYLVIA E. FARRINGTON, <br> 8 Valle Vista Drive <br> Asheville, North Carolina <br><br> Plaintiff, <br><br> v. <br><br> RAND BEERS, <br> ACTING SECRETARY, <br> U.S. DEPARTMENT OF HOMELAND <br>   SECURITY <br> 245 Murray Lane, S.W. <br> Washington, D.C. 20528-0075 <br><br> Defendant. | Civil Action No. 13-1582 |

## COMPLAINT

1. This is an appeal from a Decision on a Petition for Enforcement filed by the Plaintiff, Ms. Sylvia E. Farrington, issued by the Office of Federal Operations ("OFO"), Equal Employment Opportunity Commission, on July 17, 2013, and received by Plaintiff on July 19, 2013 ("2013 OFO Decision").  Petition Number 0420130004, EEOC Request Number 0520110295, Agency Number HS 05-FEMA-004142.

## JURISDICTION

2. This court has jurisdiction under 28 U.S.C. § 1331 because this matter arises under the laws of the United States, under 28 U.S.C. § 1343(a)(4) for damages and equitable relief under an Act of Congress providing for the protection of civil rights, under 42 U.S.C. § 2000e-16(c) for actions brought under Title VII of the Civil Rights Act of 1964.

3. All conditions precedent to the filing of this action have been met by Plaintiff in that she filed a timely EEO complaint with the Agency, filed a Formal Complaint with the

Agency, requested an administrative hearing with the Equal Employment Opportunity Commission ("EEOC"), and received a favorable Decision from EEOC Administrative Judge Eve G. Friedli.  Less than 90 days have elapsed since Plaintiff received the July 17, 2013, Decision of the OFO, from which she has filed this Appeal.

## VENUE

4. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(e)(1), and 42 U.S.C. § 2000e-5(f)(3).  Defendant is an agency of the United States with its principal headquarters in the District of Columbia.

## PARTIES

5. The plaintiff, Sylvia E. Farrington (hereinafter "Ms. Farrington" or the "plaintiff"), is an adult, female citizen of the United States and resident of North Carolina.  Since 1996, Ms. Farrington has been employed by the United States in the Federal Emergency Management Agency ("FEMA"), which is now part of the U.S. Department of Homeland Security ("DHS" or "Agency").

6. Rand Beers, 245 Murray Lane, S.W., Washington, D.C. 20528-0075, is the Acting Secretary of Homeland Security.

## FACTS

7. Ms. Farrington worked as a Branch Chief in Orlando, Florida, for FEMA.  She filed a Formal Complaint of discrimination on October 10, 2005, alleging that she had been discriminated on the bases of race (African-American), sex (female), and reprisal, for prior protected activity, when she was wrongfully subjected to an administrative to an administrative investigation that began in April 2005 and, on May 27, 2005, when she was abruptly released from her position in Orlando. According to Complainant, she was further "embarrassed and

degraded" by her release when armed security guards were asked to observe her until she left the facility with her belongings.  Moreover, Complainant alleged that the results of the investigation were "broadcast" across the Agency by employees and management officials.  Complainant also alleged that she had been subjected to an ongoing discriminatory hostile work environment since June 2001.

8.     Following the investigation into her complaint, Complainant was provided with a copy of the report of investigation and notice of her right to request a hearing before an EEOC Administrative Judge (AJ), Ms. Friedli.  Complainant timely requested a hearing. The AJ held a hearing on May 15-18, 2007.

9.     In a September 26, 2008 decision, the AJ found that Complainant proved that Agency management's articulated reasons for the administrative investigation and resulting release from her position in Orlando were a pretext for race, sex and reprisal discrimination. Moreover, while the AJ did not find sufficient evidence to support her claim of a discriminatory hostile work environment before 2005, the AJ found that during 2005, Complainant was subjected to a hostile work environment based on her race, sex and prior protected activity. Specifically, the AJ concluded that the events surrounding the investigation and release were sufficiently severe to alter the terms and conditions of Complainant's employment.

10.    In her petition for compensatory damages, Complainant stated that she started seeing a psychologist because she suffered from emotional distress, humiliation, and anguish because of Agency's actions.  Complainant also stated she suffered from headaches, sleeplessness, nervousness, anxiety, and embarrassment. Complainant's friend corroborated her testimony concerning the emotional harm she has suffered as a result of the Agency's actions, and reported that Complainant suffered from depression and humiliation and "had been

traumatized and remains in a state of devastation" after being discriminated against by the Agency.

11. After a review of the testimony, the AJ awarded Complainant $60,000 in non-pecuniary compensatory damages to compensate her for the discrimination. The AJ also awarded Complainant attorney's fees in the amount of $114,842.28. As for the remaining remedies, the AJ ordered the Agency to place Complainant in a managerial position comparable to the one she held at the time of the discrimination at issue, outside the supervision of S1 and another named Agency official; provide Complainant back pay; provide training for the RMOs; expunge evaluation reports of any documents referencing the administrative investigation from Complainant's personnel file; amend Complainant's performance evaluation to reflect a highly favorable evaluation; remove the mentoring requirement imposed by management; issue an email praising and welcoming Complainant's return to the Agency; and post a notice on all employee bulletin board nationwide stating it was found in violation of Title VII. The AJ explained that the notice should be posted nationwide given the mobility of the Agency's staff.

12. The Agency subsequently issued a final order rejecting the AJ's finding that Complainant proved that she was subjected to discrimination as alleged. At the same time, the Agency filed an appeal with OFO, EEOC, which denied its appeal on January 19, 2011. EEOC Appeal Number 0720090011, 2011 EEOPUB LEXIS 161.

13. The Agency next filed for reconsideration of the OFO's January 19, 2011, Decision. The OFO denied that appeal in a Decision issued May 12, 2011. 2011 EEOPUB LEXIS 1425.

14. In its Decision denying the Agency's request for reconsideration, the OFO ordered the Agency to take the following remedial actions:

1. Within sixty (60) calendar days of the date this decision becomes final, the Agency shall tender to Complainant $ 60,000 in non-pecuniary compensatory damages.

2. Within sixty (60) calendar days of the date this decision becomes final, the Agency shall tender to Complainant's attorney $ 114,842.48 in attorney fees.

3. Within sixty (60) calendar days of the date this decision becomes final, the Agency shall pay Complainant back pay.

4. Within sixty (60) calendar days of the date this decision becomes final, the Agency shall place Complainant in a managerial position comparable to the one she held at the time of the discrimination at issue, outside the supervision of S1 and named Agency official.

5. Within sixty (60) calendar days of the date this decision becomes final, the Agency shall provide training for the Responsible Management Officials.

6. Within sixty (60) calendar days of the date this decision becomes final, the Agency shall expunge evaluation reports of any documents referencing the administrative investigation from Complainant's personnel file.

7. Within sixty (60) calendar days of the date this decision becomes final, the Agency shall amend Complainant's performance evaluation to reflect a highly favorable evaluation.

8. The Agency shall remove the mentoring requirement imposed by management.

9. The Agency shall issue an email praising and welcoming Complainant to return to the Agency.

10. The Agency shall post nationwide in accordance with the paragraph below.

15. The Agency was further directed to submit a report of compliance, as provided in the statement entitled "Implementation of the Commission's Decision." The report was to include supporting documentation verifying that the corrective action has been implemented.

16. This report of compliance has never been issued by the Agency.

17. Plaintiff, in light of the Agency's non-compliance with the Orders of the OFO, filed a Petition to Enforce with the OFO on August 23, 2011. This Petition was docketed by the EEOC on December 20, 2012, and a Decision on the Petition was issued July 17, 2013.

18.     The 2013 OFO Decision ordered the Agency to extend its back pay award through July 8, 2011, and to provide the methodology by which it arrived at such payment. The OFO ordered the Agency to comply within 60 days of receipt of its July 17, 2013, Decision. The Agency, through its Counsel, has requested an extension, until October 31, 2013, of its deadline to comply with the 2013 OFO Order.

19.     It is Plaintiff's position that any back pay award must cover the additional period from September 26, 2008, through the date that she is offered the required "comparable managerial position." This offer has yet to occur.

20.     On April 18, 2011, the Agency made payment in the amount of $60,000 to the Complainant for compensatory damages pursuant to the 2008 decision of the AJ. In addition, on May 26, 2012, the Agency made an interim payment in the amount of $410,000 to Ms. Farrington to satisfy a portion of the back pay award.

21.     The Parties have agreed that Ms. Farrington's receipt of this $410,000 award in no way forecloses her right to continue to contest the degree of the Agency's compliance with the Order and its provisions on back pay.

22.     The 2013 OFO Decision is incorrect in the following respects. First, it fails to address Ms. Farrington's argument that the Agency's April 18, 2011, $60,000 payment for compensatory damages failed to include interest on that award from the date of the AJ's decision, September 26, 2008, through April 18, 2011. Plaintiff is entitled to interest on that compensatory damages award.

23.     Second, the $410,000 interim and partial Agency payment for back pay, according to the Agency's own admission, covers the period from the date of the discrimination, May, 2005, through the date of the AJ's Decision, which is September 28, 2008.

24.     Plaintiff disagrees with the conclusion of the OFO, in its 2013 Decision, that she rejected an unconditional offer of employment in July, 2011.  There was in fact no unconditional offer of employment.

25.     As noted, OFO, in its Decisions denying the Agency's appeal from the AJ, and in its Decision denying its request for reconsideration, affirmed the AJ's Order:  "Within sixty (60) calendar days of the date this decision becomes final, the Agency shall place Complainant in a managerial position comparable to the one she held at the time of the discrimination at issue, outside the supervision of S1 and named Agency official."

26.     Beginning in June, 2011, Ms. Farrington received two calls from FEMA Deployment and two telephone calls directly from Jack Synott, requesting that Ms. Farrington call him directly regarding a deployment request.  Mr. Synott was a FEMA DAE-Reservist assigned to the Orlando office at the time of the discriminatory acts described in Administrative Judge Friedli's decision, and whom Ms. Farrington had been advised was interviewed as part of the discriminatory, administrative investigation.

27.     Neither Mr. Synott nor Agency Counsel, with whom Plaintiff's former counsel conferred, indicated that FEMA was prepared to offer the requisite "comparable management position."  The 2013 OFO Decision's conclusion that "Complainant rejected the Agency's offer to deploy her to a disaster is not supported by the facts, and could not be more wrong.

28.     At the time of the 2011 deployment request, there was no assurance provided that Ms. Farrington's reinstatement would have been to a "comparable management position," nor was she assured that she would not have been in the supervisory reporting authority of Janet Lamb or Wayne Box.  As the AJ, Judge Friedli had ordered, "[T]he Agency must ensure that the

7

position is not under the supervisory authority (direct or indirect) of Janet Lamb and/or Wayne Box."

29.     Moreover, according to the AJ, "[T]he Complainant was not required to demote herself by working in a non-managerial job with less prestige and less salary."

30.     The Agency's 2011 communications about deployment were not consistent with Judge Friedli's requirements that such deployment be at a substantially-equivalent managerial level, and that she not be required to work with any personnel who were instrumental in the acts of discrimination that were established at the administrative hearing.

31.     Ms. Farrington in fact has deployed, but has never been offered a comparable management position.  During that most recent period of deployment, in Arlington, Virginia, from June through October, 2012, the Agency had ample opportunity to make such an offer, and it refused to do so.  After all of this time, the Agency still has not disclosed what position it claims was available to Complainant in July, 2011.  If such a position in fact existed, the Agency would simply have specified the offer and reduced it to writing.

32.     The Commission, in denying the Agency's request for reconsideration in this matter, stated that this placement issue should not be decided "based on a hypothetical situation," that is, whether FEMA did or did not intend to offer Ms. Farrington a comparable supervisory position.  Moreover, the Commission, ratifying the words of the AJ, ruled that this matter can be resolved "by placing Complainant in any position agreeable to both parties."  The fact remains that at no time did Ms. Farrington have an Agency offer of a specific position on the table.  Nor did the Agency make such an offer when it so easily could have done so during the four months, June through October, 2012, that Ms. Farrington worked full time for the Agency in Arlington, Virginia   Likewise, there remains no such offer on the table today.

33. All of the allegations contained in paragraphs 1-32 are incorporated herein as if set forth verbatim.

34. This Court should uphold the portion of the 2013 OFO Decision requiring the Agency to extend its award of back pay, but that award must cover the period September 26, 2008, through the date that the Agency offers to reinstate Plaintiff to a "comparable managerial position" as ordered by the AJ and the OFO in its two 2011 Decisions and Orders.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Accept jurisdiction of this case.

2. Grant Plaintiff a trial by jury on all issues so triable.

3. Declare that the Agency must pay interest on its award of compensatory damages;

4. Declare that the Agency must pay back pay through the date of reinstatement to a "comparable managerial position," along with interest on that back pay award.

5. Declare that the Agency must restore Plaintiff to the requisite "comparable managerial position."

6. Award reasonable attorney's fees and all other relief to which Plaintiff may be entitled.

        Respectfully submitted,
        The Plaintiff,
        Sylvia E. Farrington

By: _____/ss/_____
        Larry J. Stein
      Law Offices of Larry J. Stein
    4023 Chain Bridge Road, Suite 6
       Fairfax, Virginia 20230

        Tel.  703 383-9090
        Fax  703 424-7670
    Email:  larrystein@ljslaw.net

Attorney for the Plaintiff

Dated: October 16, 2013