UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SYLVIA E. FARRINGTON,<br><br>   *Plaintiff*,<br><br> v.<br><br>JEH JOHNSON, Secretary, U.S. Department of Homeland Security,<br><br>   *Defendant*. | Civil Action No. 13-1582 (RDM) |

## MEMORANDUM OPINION AND ORDER

In September 2008, an Administrative Judge ("AJ") of the Equal Employment Opportunity Commission ("EEOC") found that the Federal Emergency Management Agency ("FEMA") discriminated and retaliated against Sylvia Farrington in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Among other relief, the AJ awarded Farrington backpay. The AJ's decision was then affirmed by the EEOC in various administrative orders. Most recently, in July 2013, the EEOC granted Farrington's petition for enforcement and ordered that FEMA (1) "conduct a supplemental investigation" of how "it calculated the backpay it estimated was owed to" Farrington; (2) "modify [those] calculations to cover pay lost through July 11, 2011;" (3) "provide additional payments as necessary;" and (4) provide the EEOC with a compliance report, documentation supporting FEMA's calculations, and "evidence of prior payments" that FEMA provided to Farrington. Dkt. 16-7 at 6.

Farrington brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. 706(1), seeking to compel FEMA's compliance with the EEOC's back-pay orders. Dkt. 13. Although Farrington does not dispute that FEMA has made a $410,000 payment to her, she

contends that this was merely an interim payment of the undisputed portion of the backpay and that FEMA owes her further compensation under the EEOC's orders. FEMA, in contrast, argues that it has already complied in full with the EEOC orders—and indeed, that it has paid Farrington more than the amount to which she is entitled—and moves to dismiss, or in the alternative, for summary judgment. *See* Dkt. 16. For the reasons explained below, the Court will deny FEMA's motion.

## I. BACKGROUND

Sylvia Farrington began working for FEMA as a Disaster Assistance Employee ("DAE") in 1996 and, over the next eight years, "had a consistent work history of being deployed . . . in senior level management positions for catastrophic events." Dkt. 16-1 at 7. Beginning in August 16, 2004, FEMA deployed Farrington to its Orlando, Florida Joint Field Office, where she served as Branch Chief of Community Education and Outreach. *Id.* at 9; Dkt. 16 at 5. As Branch Chief, Farrington was responsible for "deployment of 400–500 employees," as well as "managing mitigation, planning, and responding to catastrophic events." Dkt. 16-1 at 9.

FEMA "released" Farrington from the Orlando Branch Chief position on May 27, 2005—a decision that she subsequently challenged under Title VII. *Id.* At the time of her "release," Farrington was told that she would be allowed to return to an "available managerial position[,]" after completing "a training course" and working with "a mentor on a project." *Id.* at 33. Farrington was later offered a managerial position in FEMA Region 6—Hazard Management Community Education Outreach Group Supervisor in Baton Rouge, Louisiana— but the offer was rescinded because she had not yet completed the mentoring assignment. Dkt. 16 at 5.

Farrington filed a formal Equal Employment Opportunity ("EEO") complaint on October 10, 2005, alleging that FEMA had engaged in discrimination on the basis of race and sex, as well as retaliation, beginning in 2001 and culminating in her May 2005 release from the Orlando Branch Chief position. Dkt. 16-1 at 6. After a hearing, an EEOC AJ issued a decision on September 26, 2008, finding that Farrington

> was discriminated against on the basis of race (African-American), sex (female), and [was a victim of] retaliation (prior EEO activity) when: (1) she was wrongfully subjected to an administrative investigation which began in April of 2005, and culminated on May 27, 2005, when she was abruptly released from her Branch [Chief] position in Orlando, Florida, and said release occurred with the additional embarrassment and degradation of security guards positioned in the area; and (2) she was subjected to an ongoing hostile work environment beginning in January 2005, when her authority was undermined by [a supervisor,] Janet Lamb[,] and Lamb publically announced to employees and management officials that [Farrington] had been investigated and released.

Dkt. 16-1 at 47–48.[1]

The AJ found that Farrington had "engaged in protected activity when she had a discussion [in January 2005] with Janet Lamb about how [Lamb] treats non-whites," Dkt 16-1 at 13;[2] *see also id.* at 10, and that Lamb had then engaged in a "campaign against" Farrington, including causing other employees to document complaints about Farrington's management style, *id.* at 21–22, 35. Although Farrington took "steps to address staff concerns," FEMA initiated an "administrative investigation [that] derailed this process" and that culminated in Farrington's "release" from her managerial position. Dkt. 16-1 at 22–23. The AJ further found

---

[1] The AJ held that Farrington had failed to establish that she was subjected to a hostile work environment prior to January 2005. *See* Dkt. 16-1 at 45, 47.

[2] Among other issues, Farrington had heard second-hand that Lamb had used the word "darkie." The AJ found that Farrington "could not show that Janet Lamb had [in fact] used the word," although Farrington "<u>strongly believed</u>" that Lamb had done so and had raised the issue with Lamb. Dkt. 16-1 at 44–45 (emphasis in original).

3

that FEMA subjected Farrington to disparate treatment with respect to the initiation and conduct of the investigation—an *ad hoc* proceeding in which Farrington was not given an opportunity to rebut the allegations against her—as well as with respect to the penalty imposed following the investigation. *See* Dkt. 16-1 at 17–18, 26–27. Finally, the AJ found that, although some FEMA officials believed that the investigation was "suspect" and accordingly rejected a recommendation that Farrington be terminated from *all* FEMA employment, Farrington was never provided a "realistic" opportunity to complete the mentoring assignment that FEMA imposed as a prerequisite to her future eligibility for managerial positions, and, at any rate, the mentoring requirement would not have been imposed but for the unlawful discrimination and retaliation. Dkt. 16-1 at 33, 35, 54.

At least for present purposes, none of this in contested. Rather, this case focuses on whether FEMA has complied with the EEOC's remedial orders.

**A.     2008 EEOC Order**

Based on her finding that FEMA violated Title VII is various respects, the AJ awarded Farrington backpay, $60,000 in non-pecuniary damages for emotional and reputational injury, and $114,842.48 in attorney fees. Dkt. 16-1 at 49, 65. The AJ also struck the mentoring requirement, ordered FEMA immediately to place Farrington in a managerial position comparable to that of Orlando Branch Chief (outside the supervisory authority of Lamb and another person), directed the agency to take steps to restore Farrington's reputation, and ordered that Lamb and others receive anti-discrimination trainings. Dkt. 16-1 at 66–70.

With respect to the calculation of backpay—the issue that lies at the core of the present action—the AJ provided detailed guidance. She explained:

> (1) Had it not been for the discrimination, [Farrington] would have continued to work in Orlando, Florida, in her Branch Chief position until she was offered the

position in Region 6.  Thus, she is entitled to backpay for the duration of time that the Branch Chief position in Orlando was filled by anybody up to the point of time that she was offered the position in Region 6 referenced below in paragraph (2). Her backpay shall be calculated at her base salary (at $80,000 per year for any regular hours worked) plus overtime hours worked paid at the overtime rate of pay minus any interim earnings.  The amount of any overtime hours worked by her replacement(s) (up to the point of time that she was offered the position in Region 6) shall be determined and this amount of hours shall then be paid to the Complainant in overtime pay.

(2) Had it not been for the required discriminatory mentoring requirement, [Farrington] would have been assigned to the management position in Region 6, which had previously been offered to her, but then retracted because she had not completed her mentoring assignment.  The evidence showed that Ronald Holmes was placed in the position.  Thus, [Farrington] is entitled to backpay for the duration of time that this position was filled at her base salary (at $80,000 per year for any regular hours worked) plus overtime hours worked paid at the overtime rate of pay minus any interim earnings.  The amount of any overtime hours worked by Ronald Holmes and/or his replacement(s) shall be determined and this amount of hours shall then be paid to [Farrington] in overtime pay.  In the event that the title of this position changed due to a temporary office changing into a long term recovery office, but the duties remained significantly the same and Holmes (or his replacement) continued to perform the work, then this shall be considered a position for which [Farrington] is entitled to backpay.

(3) The evidence is too speculative to allow for backpay after any elimination of the position referenced immediately above in paragraph (2). [Farrington] testified about how many days she had worked in past years.  However, due to the nature of FEMA's business[,] its need for employees to perform disaster relief varies significantly from year to year and varies within FEMA's regions throughout the United States.  Needs are depend[e]nt upon whether a disaster strikes and, if so, the extent of destruction. The record was void of what FEMA's needs were after the offer for work in Region 6 was withdrawn.  Therefore, [Farrington] has not established that she is entitled to any backpay other than the backpay previously described in paragraphs (1) and (2) above. . . .

\* \* \*

Notwithstanding paragraphs (1) and (2) above, [Farrington] is not entitled to nine weeks of backpay during the time she was caring for her mother and unavailable to work. . . . Thus, the backpay calculation shall treat [Farrington] as unavailable for work for the first three weeks in November 2005[,] . . . [for] the first three weeks in January 2006, and . . . for the first three weeks in March 2006.

Dkt. 16-1 at 55–57.

B.  **FEMA's Administrative Appeals**

FEMA filed a timely appeal with the EEOC's Office of Federal Operations ("OFO"), challenging the merits of the AJ's discrimination and retaliation findings, as well as her awards of backpay and non-pecuniary damages. *See Farrington v. Napolitano*, EEOC DOC 0720090011, 2011 WL 281737, at \*1, \*5 (Jan. 19, 2011). On January 19, 2011, the OFO affirmed the AJ's findings of discrimination and retaliation, as well as her remedial orders. *Id.* at \*6–8. Of relevance here, the OFO rejected FEMA's challenge to the AJ's backpay award without comment, stating only that "[w]ithin sixty (60) calendar days of the date this decision becomes final, the Agency shall pay [Farrington] backpay," *id.* at \*8. The OFO "further directed [FEMA] to submit a report of compliance" with the EEOC's decision, including supporting documentation. *Id.*

FEMA then requested reconsideration of the OFO's decision, "or in the alternative, clarification of relief ordered." *Farrington v. Napolitano*, EEOC DOC 0520110295, 2011 WL 1924194, at \*1 (May 12, 2011). With respect to backpay, FEMA argued that "because [Farrington's] job as a Disaster Assistance Employee (DAE) was intermittent in nature, it is very difficult to calculate backpay, without speculation" and "that it is unclear when backpay should end since the position [Farrington] occupied prior to being released was later converted to a Disaster Temporary Employee, a full-time position in 2005, which means she would have been asked to compete for the position and her selection was not guaranteed." *Id.*

On May 12, 2011, the OFO denied FEMA's request for reconsideration. *Id.* at \*3. Addressing the back-pay award, it explained that

> [t]he AJ's decision provided *specific direction on how to calculate backpay and determine when it ceased.* Given the language in *Farrington* that the Commission discerned no basis to disturb the AJ's findings and remedial orders and its general order for backpay, *we find that compliance with the Commission's order for back*

6

> *pay requires the Agency to follow directions in the AJ's decision for calculating back pay, as well as complying with 29 C.F.R. § 1614.501.1*.  To the extent this does not resolve some questions, the Agency must comply with Commission case law in resolving how to calculate back pay.

*Id.* at *2 (emphasis added) (footnote omitted).  In a footnote, the OFO further explained that, although the AJ had stated that backpay should be based on a salary of $80,000 per year, "this does not take into account salary increases, if any, as anticipated by 29 C.F.R. § 1614.501, which must be included." *Id.* at *2 n.1.  Finally, the OFO again ordered FEMA to "pay [Farrington] back pay" "within sixty (60) calendar days of the date this decision becomes final" and "to submit a report of compliance," including supporting documentation. *Id.* *6–7.

**C.     Farrington's Petition to Enforce EEOC Order**

On December 20, 2012, the EEOC docketed a petition by Farrington for enforcement of certain of the Commission's prior orders. *Farrington v. Napolitano*, EEOC DOC 0420130004, 2013 WL 3865033, at *1 (July 17, 2013).  In particular, Farrington raised "unresolved matters concern[ing] back pay and her placement in a managerial position." *Id.* at *2.[3]  "With respect to back pay, [Farrington] argue[d] that calculations should be based on the position of 'Hazard Mitigation Community Education and Outreach Group Supervisor' and cover the time period of May 27, 2005 through May 12, 2011 (the date of the Commission's decision)." *Id.*  "As for her placement in a [managerial] position," Farrington argued that FEMA's July 11, 2011 offer to redeploy her did not include "adequate assurances that she will not be placed in work situations with her harassers." *Id.* at *2, *4.

In response, FEMA maintained that it had already paid Farrington an "estimated amount" of $410,000 for backpay; that "[w]hen [FEMA] recalculated back pay, based upon the correct

---

[3]   Farrington acknowledged that FEMA had paid the $60,000 compensatory damages award and the $114,842.48 attorney fees award.  *Id.* at * 1–2.

7

job title, it found that [Farrington] was only entitled to $331.9089.30;" and that the resulting overpayment was sufficient to cover any interest to which Farrington might be entitled. *Id*. at *3. FEMA further argued, moreover, that even if a further calculation of backpay was warranted, the relevant period should "end on July 8, 2011, when [Farrington] rejected [FEMA's] offer to deploy her to a disaster." *Id.*

The EEOC agreed with Farrington in part and with FEMA in part. With respect to backpay, it found that FEMA's estimates and representations were insufficient. It explained:

> The record before us does not contain adequate evidence of [FEMA's] backpay calculations or of payments already provided to [Farrington]. [FEMA] has only provided a document entitled "Settlement Estimates for [Farrington] Comparison to salary of Haz Mit Comm Ed & Outreach Group Supv." This document appears to cover pay periods between 2005 and 2008. The totals on the estimates are not explained and do not match what [FEMA] claims to have already paid [Farrington]. Further, there is no evidence of the $410,000 payment to [Farrington]. [FEMA] has not provided supporting documentation for any of its purported calculations.

*Id.* With respect to the relevant end date, however, the EEOC agreed with FEMA, concluding that FEMA "fulfilled its obligations . . . when it contacted [Farrington] for deployment" to a managerial position. Id. at *4. FEMA contacted Farrington's counsel regarding this possible deployment, and Farrington rejected "the order to deploy on July 11, 2011." *Id.* As the EEOC explained, because "an employer's backpay liability is tolled when a complainant rejects an unconditional offer of employment," FEMA was only "required to provide back pay to [Farrington] from May 27, 2005 until [she declined to deploy on] July 11, 2011." *Id.*

Based on these findings, the EEOC entered the order that Farrington now seeks to enforce. It ordered: "Within thirty (30) calendar days of the date this decision becomes final, [FEMA shall] conduct a supplemental investigation with regard to the precise manner in which it calculated the backpay it estimated was owed to [Farrington]" and to "modify such calculations to cover pay lost through July 11, 2011, and provide additional payments as necessary." *Id.* It

further ordered FEMA to submit supporting documentation of its calculations and prior payments, as well as a report of compliance "within thirty (30) calendar days of the completion of all ordered corrective action." *Id.* Finally, the EEOC order advised that "[i]f [FEMA] does not comply with the [EEOC's] order, [Farrington] may petition [it] for enforcement" or exercise her "right to file a civil action to enforce compliance with the [EEOC's] order." *Id.*

**D.     Present Suit**

Electing to pursue the second of these options, Farrington timely commenced this action on October 16, 2013. *See* Dkt. 1. Although she initially brought suit under Title VII, 42 U.S.C. § 2000e-16(c), seeking to challenge some aspects of the July 2013 EEOC decision while seeking to enforce others, *see* Dkt. 1 at 1, 6–7, 9 (Compl. ¶¶ 2, 22–24, 34), she filed an amended complaint on September 12, 2014, *see* Dkt. 13 (Amend. Compl.). The now-operative amended complaint seeks judicial review under the APA and seeks only to *enforce* the July 2013 EEOC decision's rulings regarding backpay—that is, "to compel agency action unlawfully withheld or unreasonably delayed" pursuant to 5 U.S.C. § 706(1). *See* Dkt. 13 at 1, 6–7 (Amend. Compl. ¶¶ 1, 24). Accordingly, Farrington no longer *challenges* the EEOC decision in any respect. *See id.*; *see also* Dkt. 18 at 9–10 & n.6.[4] FEMA moves to dismiss the complaint or, in the alternative, for summary judgment. Dkt. 16.

## II. ANALYSIS

**A.     Threshold Considations**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin against, among others, covered federal

---

[4] The case was stayed for several months while the parties pursued mediation. Thereafter, Farrington filed her amended complaint, Dkt. 13, and FEMA filed the motion presently before the Court, Dkt. 16.

employees. *See* 42 U.S.C. §§ 2000e-16(a); 2000e-2(a). Before filing suit in federal court, covered federal employees, like Farrington, must pursue administrative adjudication of their claims. *See id.* §§ 2000e-5; 2000e-12; 2000e-16. EEOC regulations provide a detailed framework for the required administrative proceedings. *See Scott v. Johanns*, 409 F.3d 466, 468 (D.C. Cir. 2005) (describing framework). First, the aggrieved employee must file a complaint with the employing agency, which must conduct an investigation and, at the employee's request, refer the matter to an EEOC AJ for a hearing. *See* 29 C.F.R. §§ 1614.106, 1614.108–09. After the investigation is complete or, if the employee requests a hearing, after the AJ issues a decision, the employing agency must "take final action" on the complaint. *Id.* § 1614.110. If the employing agency's "final order does not fully implement the decision of the [AJ]," the employing agency must then file an appeal with the Office of Federal Operations—the EEOC's appellate arm. *See id.* §§ 1614.403, 1614.110(a). The EEOC "reviews the record, supplements it if necessary, and then issues a written decision." *Scott*, 409 F.3d at 468. As relevant here, the EEOC's decision becomes final when it denies reconsideration of its decision, triggering the employee's right to bring suit in district court. *See id.*; 29 C.F.R. §§ 1614.405, 1614.407.

There are then "two types of civil actions that may arise from Title VII's federal-sector administrative process." *Scott*, 409 F.3d at 469. "First, complainants who prevail in the administrative process but who—for whatever reason—fail to receive their promised remedy, may sue to enforce the final administrative disposition." *Id.* "In such enforcement actions, the court . . . examin[es] . . . only whether the employing agency has complied with the administrative disposition" and does not review the "discrimination finding nor the remedy imposed." *Id.* The second type of civil action arises when the complainant challenges the

EEOC's findings as to liability or remedy, and in such an action the district court reviews *de novo* both the EEOC's underlying finding of liability and the remedial award. *Id.*

This action is of the first type. FEMA argues at length that the EEOC's July 17, 2013 order was not arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law and seeks summary judgment on that basis, *see* Dkt. 16 at 25–29, but it misunderstands Farrington's operative allegations. In her amended complaint, Farrington seeks only to *enforce* the EEOC's July 17, 2013 order and does not challenge it in any respect. *See* Dkt. 13 at 1, 6–7 (Amend. Compl. ¶¶ 1, 24); *see also* Dkt. 18 at 9–10 & n.6. Although she did challenge the order in her original complaint, *see* Dkt. 1 at 1, 6–7, 9 (Compl. ¶¶ 1, 22–24, 34), she has now abandoned that position, *see* Dkt. 13 at 1, 6–7 (Amend. Compl. ¶¶ 1, 24); *see also* Dkt. 18 at 9–10 & n.6.

FEMA frames the remainder of its motion as a motion to dismiss for lack of subject-matter jurisdiction. It contends that it has now complied with the EEOC's July 17, 2013 order and that Farrington's claim is, accordingly, moot. *See* Dkt. 16 at 16–24. That, however, is precisely what Farrington disputes in this case. Thus, whether FEMA has complied with the EEOC's July 17, 2013 order goes to the *merits* of Farrington's claim, and not to whether the Court has *jurisdiction* to resolve that claim. *See Johnson v. Brennan*, 144 F. Supp. 3d 121, 130 (D.D.C. 2015) (explaining that the Court had subject-matter jurisdiction over "a civil action for enforcement of a (presumably) favorable administrative disposition" by the EEOC); *Rochon v. Attorney Gen. of the U.S.*, 710 F. Supp. 377, 379 (D.D.C. 1989) (holding summary judgment premature where plaintiff sought judicial enforcement of EEOC decision but defendant's position was "that all relief ordered by that decision has been provided"). The Court, accordingly, rejects this argument as well.

The fact that the EEOC has not—at least as far as the record reveals—itself made a finding with respect to whether FEMA has complied with the July 17, 2013 order poses a more substantial question—albeit one not discussed by either party. Although the D.C. Circuit has reserved judgment on the issue, *see Wilson v. Pena*, 79 F.3d 154, 165 n.8 (D.C. Cir. 1996), some courts have held that "an EEOC determination of non-compliance . . . is a prerequisite" to bringing an enforcement action, *Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003). This view finds some support, moreover, in the governing EEOC regulation, which provides:

> Where the Commission has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision pursuant to Title VII, the ADEA, the Equal Pay Act or the Rehabilitation Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. 701 et seq., and the mandamus statute, 28 U.S.C. 1361, or to commence de novo proceedings pursuant to the appropriate statutes.

29 C.F.R. § 1614.503(g). Thus, in the absence of a determination by the EEOC that the "agency is not complying" with an order or has failed to submit a compliance report, it is unclear whether the claimant's right to seek judicial review of the agency's "refusal to implement the ordered relief" has been triggered.

Here, however, FEMA has not raised an exhaustion defense, and, because the defense would not in any event deprive the Court of jurisdiction, *see Norris v. Salazar*, 885 F. Supp.2d 402, 414 & n.13 (D.D.C. 2012), "the Court [need] not consider [the issue] *sua sponte*," *Johnson*, 144 F. Supp. 3d at 130. The fact that Farrington has already filed one EEOC enforcement petition, moreover, is not lost on the Court—nor is the fact that the EEOC had previously admonished FEMA that "compliance with the Commission's order for back pay requires [FEMA] to follow the [detailed] directions in the AJ's decision for calculating back pay, as well as complying with 29 C.F.R. § 1614.501," *Farrington*, 2011 WL 1924194, at *2. Finally, the

12

EEOC itself informed Farrington that, "[i]f [FEMA] [did] not comply with the Commission's order," Farrington could *either* "petition the Commission to enforce the order" *or* "file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement." *Farrington*, 2013 WL 3865033, at *4.

Under these circumstances—and, in particular, given FEMA's failure to raise the issue—the Court will not dismiss Farrington's enforcement action for failure to exhaust.

**B.     The Merits**

Notwithstanding the fact that the portion of FEMA's motion addressing the merits of Farrington's claim is based on mootness, both FEMA and Farrington have, in effect, presented their respective evidence and arguments on the merits. Thus, as a matter of judicial economy, the Court will treat FEMA's motion as a motion for summary judgment on the merits.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Liberty Lobby*, 477 U.S. at 248). "The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact," which it may accomplish by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *DeRose v. Rice*, No. 04-0338, 2006 WL 367888, at *7 (D.D.C. Feb. 16, 2006) (internal quotation marks omitted), *aff'd*, 236 F. App'x 635 (D.C. Cir.

2007). To avoid summary judgment, "[a] non-moving party . . . must [in turn] establish more than the mere existence of a scintilla of evidence in support of its position." *Id.* (quotation marks omitted).

Here, the summary judgment inquiry arises in a unique context. The Court is not called upon to consider whether FEMA engaged in discriminatory or retaliatory conduct or to decide what remedies are warranted. Rather, the sole question before the Court is whether FEMA has complied with the EEOC's July 17, 2013 order directing that it (1) conduct a supplemental investigation" regarding the manner in which "it calculated the backpay award it estimated it owed" Farrington; (2) "modify such calculations to cover pay lost through July 11, 2011;" (3) "provide additional payments as necessary;" (4) provide supporting documentation and evidence of prior payments to the EEOC; and (5) provide a compliance report to the EEOC. *Farrington*, 2013 WL 3865033, at *4. Although "[t]he Court is aware of no precedent establishing the evidentiary burden that [a] plaintiff must meet in an enforcement action such as this, . . . it need not decide the proper standard" at this juncture. *DeRose*, 2006 WL 367888, at *8. As explained below, the Court concludes that under any plausible standard, FEMA has failed to establish the absence of a genuine dispute of material fact.

To start, the present record fails to demonstrate that FEMA has complied with the EEOC's order in one key respect. In response to FEMA's contention that its payment of "the undisputed amount" of $410,000 was "more than sufficient" to compensate Farrington for lost wages, the EEOC found that FEMA had failed to provide "supporting documentation for any of its purported calculations," *Farrington*, 2013 WL 3865033, at *3, and it, accordingly, ordered FEMA to provide that documentation, *id.* at *4. As far as current record reveals, FEMA has yet to provide further documentation of "the precise manner in which it calculated" $410,000 figure.

*Id.* FEMA's motion, instead, relies on documents it submitted to the EEOC, Dkt. 16-6 at 3 & n. 2—documents which the EEOC held inadequate—and declarations prepare for purposes of this litigation, which do not recount or document how FEMA actually "estimated" the $410,000 amount, *see* Dkt. 16-8, 16-9.

FEMA has also failed to show the absence of a genuine dispute of material fact as to whether FEMA has complied with the EEOC's order with respect to the calculation and payment of backpay it owes to Farrington. The EEOC ordered FEMA "to conduct a supplemental investigation with regard to the precise manner in which it calculated the backpay it estimated was owed" *and* to "modify such calculations to cover pay lost through July 11, 2011, and [to] provide additional payments as necessary." *Id.* at *4. In arguing that it has fully complied with the EEOC's order, FEMA focuses on the fact that it has conducted a supplemental investigation, which, in its view, vindicated its prior position that the $410,000 payment was "more than sufficient" to compensate Farrington. *See* Dkt. 16 at 17–24. There are numerous outstanding questions of disputed material fact, however, about whether the $410,000 payment that Farrington has received satisfies FEMA's backpay obligation under these directives. Most obviously, the dearth of competent, detailed evidence as to how FEMA calculated the $410,000 figure impairs Farrington's—and the Court's—ability to assess whether that sum was sufficient to discharge FEMA's obligation. Where there is evidence, moreover, it is disputed.

In arguing that it has now determined that Farrington was entitled to only about $60,000 in back pay, Dkt. 16 at 23, for example, FEMA relies on the AJ's conclusion that Farrington is entitled to "backpay for the duration of time that the Branch Chief position in Orlando was filled by anybody up to the point of time that she was offered the position in Region 6." Dkt. 16-1 at 55. According to FEMA, this means that Farrington was entitled to no backpay for the period of

time preceding her (rescinded) offer of employment in the Region 6 position because FEMA's supplemental investigation purportedly revealed that "no individual . . . held the position of Community Education Branch Chief after . . . Farrington" was released from that position. Dkt. 16-8 at 2 (Thompson Decl. ¶ 6). But Farrington points to countervailing evidence that, even if no one held the identical title after her release, another FEMA employee performed the same job functions. *See* Dkt. 18 at 12; Dkt. 18-2 at 3–4; Dkt. 25 at 2. And, to the extent FEMA's position turns exclusively on the job title—regardless of overlap in the actual substance of the job—the Court is unpersuaded that the EEOC's decision can be given such a crabbed construction.

FEMA also argues that the second period of time identified in the AJ's order—"the duration of time that" the position of Community Education Outreach Group Supervisor in Region 6 position was filled, Dkt. 16-1 at 55—ended in June 2006. Relying on a theory similar to its contention that Farrington's prior position was left unfilled, FEMA argues that FEMA downsized its operations in June 2006, and, as a result, the duties of the Region 6 Community Education Outreach Group Supervisor were subsumed by "the staff that was already deployed." Dkt. 16-9 at 3–4 (McGrane Decl. ¶¶ 12–14). In response, however, Farrington adduces evidence that, for at least some time after June 2006, FEMA did employ a Community Education Outreach Group Supervisor in Region 6. *See* Dkt. 18 at 14; Dkt. 18-5 at 2. She further points out that FEMA's contention that this person was hired for long-term recovery, *see* Dkt. 21-2 at 2 (McGrane Decl. II ¶ 8), whereas she was at least nominally a temporary employee, is irrelevant in light of the EEOC's order that Farrington is entitled to backpay even if "the title of this position changed due to a temporary office changing into a long term recovery office." Dkt. 16-1 at 56. On the present record, the Court cannot determine whether, at least as a functional

16

matter, the Region 6 position's duties continued to be performed after June 2006, and if so, for how long.

In light of the multiple material issues of fact that remain in dispute, the Court will deny FEMA's motion for summary judgment.

## CONCLUSION

For the forgoing reasons, it is hereby **ORDERED** that FEMA's motion to dismiss or, in the alternative, for summary judgment is **DENIED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 11, 2016