# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SYLVIA E. FARRINGTON,

        *Plaintiff*,

    v.

KIRSTJEN NIELSEN, Secretary, Department
of Homeland Security,

        *Defendant*.

Civil Action No. 13-1582 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

This is yet the latest chapter in a discrimination and retaliation case dating back to at least

May 2005, when Plaintiff Sylvia Farrington was released from her position as a Branch Chief in

the Orlando office of the Federal Emergency Management Agency ("FEMA"). Farrington filed

an administrative complaint, and the Equal Employment Opportunity Commission ("EEOC")

ultimately found in her favor. Among other relief, the EEOC awarded Farrington back pay.

That, however, was far from the end of the dispute. FEMA filed an unsuccessful administrative

appeal and a request for reconsideration or clarification, and Farrington filed an EEOC petition

for enforcement of the Commission's order. Notwithstanding that additional administrative

litigation, and notwithstanding FEMA's payment to Farrington of an "estimated amount" of

$410,000 for back pay, the parties remained at loggerheads. Farrington then brought suit in this

Court, seeking an order compelling FEMA to comply with the EEOC's order, which directed

that FEMA: (1) "conduct a supplemental investigation" of how "it calculated the backpay it

estimated" it owed Farrington, and (2) "provide additional payments" to Farrington "as

necessary." *Farrington v. Napolitano*, EEOC DOC 0420130004, 2013 WL 3865033, at *3 (July

17, 2013). In an earlier opinion, the Court denied FEMA's motion for summary judgment, concluding that there was a "dearth of competent, detailed evidence [regarding] how FEMA calculated the $410,000 figure" and about whether FEMA had, as it asserted, already discharged its obligations under the EEOC order. *Farrington v. Johnson*, 206 F. Supp. 3d 634, 644 (D.D.C. 2016).

The case is now back before the Court on FEMA's renewed motion for summary judgment and Farrington's cross-motion for summary judgment. In addition, after the Court denied FEMA's initial motion, FEMA filed a counterclaim against Farrington seeking reimbursement of a substantial portion of the $410,000, which FEMA now says that it overpaid Farrington. Farrington, in turn, has moved to dismiss that counterclaim on the ground that FEMA previously conceded that it owed at least the $410,000 that it paid her. The difficulty with all of this is that the only claim before the Court is an Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), claim seeking to compel FEMA to comply with the EEOC's order, and that claim has engendered a genuine dispute of material fact. Because the authority of the Court to resolve factual disputes in the context of an APA action to enforce an administrative order is limited, and because the EEOC, in any event, is better suited to resolve any factual dispute relating to the claims that it has already adjudicated, the Court will deny the pending motions without prejudice and will stay this action to permit Farrington to return to the EEOC (and FEMA, if necessary) to resolve the remaining factual disputes.

## I. BACKGROUND

The factual and procedural background of this case is recounted at length in the Court's prior opinion. *Farrington*, 206 F. Supp. 3d at 636–41. For present purposes, the Court will briefly recount only the relevant history.

## A.      Farrington's Employment

Sylvia Farrington began working for FEMA as a Disaster Assistance Employee ("DAE") in 1996.  Although DAEs are hired to work on an intermittent basis in response to particular disasters, Dkt. 16-3 at 2; Dkt. 16 at 4–5, Farrington "had a consistent work history of being deployed over eight years with FEMA in senior[-]level management positions for catastrophic events" preceding the events at issue in her discrimination and retaliation complaint.  Dkt. 16-1 at 7.  "At the time of the events at issue, [Farrington] was serving as a Branch Chief of Community Education and Outreach in FEMA's Orlando, Florida office."  Dkt. 16-2 at 2.  In that role, she was responsible for "deployment of 400–500 employees," as well as "managing mitigation, planning, and responding to catastrophic events."  Dkt. 16-1 at 9.

FEMA "released" Farrington from her position in the Orlando office in May 2005 and, at that time, told her that she would be allowed to return to an "available managerial position[]" after completing "a training course" and working with "a mentor on a project."  *Id.* at 33.  Consistent with that undertaking, she was later offered a managerial position in FEMA Region 6 as the Hazard Management Community Education Outreach Group Supervisor in Baton Rouge, Louisiana.  Dkt. 16 at 5.  FEMA rescinded that offer, however, because Farrington had "not completed [the] mentoring assignment."  Dkt. 16-1 at 35.

## B.      Administrative Actions

On October 10, 2005, Farrington filed an administrative complaint alleging that she was discriminated against based on her race and sex and was retaliated against for complaining about workplace race discrimination.  Dkt. 16-1 at 6.  On September 26, 2008, an EEOC Administrative Judge ("AJ") found in Farrington's favor, concluding that she "was discriminated against on the basis of race (African-American) [and] sex (female), and" in retaliation for her "prior EEO activity."  *Id*. at 47–48.  Among other things, the AJ found that Farrington was

discriminated and retaliated against when she was discharged from her Orlando Branch Chief position *and* when she was denied the Region 6 managerial position. Dkt. 16-1 at 47–48, 55–57. The AJ ordered that FEMA immediately place Farrington in a managerial position comparable to her former position and award her the following damages: $60,000 in non-pecuniary damages for emotional and reputational injury, $114,842.48 in attorneys' fees, and—as relevant to this case— back pay. *Id.* at 64–65.

For purposes of the present suit, the AJ's finding of discrimination is not disputed. Instead, the crux of the case is whether FEMA has complied with the AJ's order that it provide Farrington with back pay, calculated as follows:

> (1) Had it not been for the discrimination, [Farrington] would have continued to work in Orlando, Florida, in her Branch Chief position until she was offered the position in Region 6. Thus, she is entitled to back pay for the duration of time that the Branch Chief position in Orlando was filled by anybody up to the point of time that she was offered the position in Region 6 referenced below in paragraph (2). Her back pay shall be calculated at her base salary (at $80,000 per year for any regular hours worked) plus overtime hours worked[,] paid at the overtime rate of pay minus any interim earnings. The amount of any overtime hours worked by her replacement(s) (up to the point of time that she was offered the position in Region 6) shall be determined[,] and this amount of hours shall then be paid to the Complainant in overtime pay.

> (2) Had it not been for the required discriminatory mentoring requirement, [Farrington] would have been assigned to the management position in Region 6, which had previously been offered to her, but then retracted because she had not completed her mentoring assignment. The evidence showed that Ronald Holmes was placed in the position. Thus, [Farrington] is entitled to back pay for the duration of time that this position was filled at her base salary (at $80,000 per year for any regular hours worked) plus overtime hours worked paid at the overtime rate of pay minus any interim earnings. The amount of any overtime hours worked by Ronald Holmes and/or his replacement(s) shall be determined and this amount of hours shall then be paid to [Farrington] in overtime pay. In the event that the title of this position changed due to a temporary office changing into a long[-]ter[m] recovery office, but the duties remained significantly the same and Holmes (or his replacement) continued to perform the work, then this shall be considered a position for which [Farrington] is entitled to back pay.

(3) The evidence is too speculative to allow for back pay after any elimination of the position referenced immediately above in paragraph (2). [Farrington] testified about how many days she had worked in past years. However, due to the nature of FEMA's business[,] its need for employees to perform disaster relief varies significantly from year to year and varies within FEMA's regions throughout the United States. Needs are depend[e]nt upon whether a disaster strikes and, if so, the extent of destruction. The record was [de]void of what FEMA's needs were after the offer for work in Region 6 was withdrawn. Therefore, [Farrington] has not established that she is entitled to any back pay other than the back pay previously described in paragraphs (1) and (2) above.

Dkt. 16-1 at 55–56.

On appeal, the EEOC's Office of Federal Operations ("OFO") affirmed the AJ's discrimination and retaliation findings as well as the back pay award. *Farrington v. Napolitano*, EEOC DOC 0720090011, 2011 WL 281737, at *6–8 (Jan. 19, 2011). The OFO ordered that "[w]ithin sixty (60) calendar days of the date this decision becomes final, [FEMA] shall pay [Farrington] backpay." *Id.* at *8.

FEMA then requested reconsideration or clarification. Of particular relevance here, FEMA argued (1) that "because [Farrington's] job as a Disaster Assistance Employee (DAE) was intermittent in nature, it is very difficult to calculate back pay, without speculation" and (2) "that it is unclear when back pay should end since the position [Farrington] occupied prior to being released was later converted to a Disaster Temporary Employee, a full-time position in 2005, which means she would have been asked to compete for the position and her selection was not guaranteed." *Farrington v. Napolitano*, EEOC DOC 0520110295, 2011 WL 1924194, at *1 (May 12, 2011). In response, the OFO simply observed that "[t]he AJ's decision provided specific direction on how to calculate back pay and determine when it ceased," and it directed FEMA to "follow directions in the AJ's decision for calculating back pay." *Id.* at *2. "To the extent that this does not resolve [the remaining] questions," the OFO added, "the Agency must comply with Commission case law in resolving how to calculate back pay." *Id.* The OFO

repeated its order that FEMA "pay [Farrington] back pay" "within sixty (60) calendar days of the date this decision becomes final" and "to submit a report of compliance," including supporting documentation. *Id.* at *2–4.

On July 8, 2011, FEMA offered to deploy Farrington to a disaster in a supervisor position, but she declined the offer. The following year, FEMA paid Farrington $410,000 in back pay, which FEMA estimated would compensate her for the period from May 26, 2005 (when she was discharged) to September 26, 2008 (the date of the AJ's order). Dkt 16-6 at 3–4 & n.2. After FEMA failed to make additional payments, however, Farrington petitioned the EEOC for enforcement of its order, claiming that she was also owed back pay for the period after September 26, 2008. *Farrington v. Napolitano*, EEOC DOC 0420130004, 2013 WL 3865033, at *1–2 (July 17, 2013) ("July 2013 EEOC order"). FEMA disagreed but added that, "if additional back pay" was due, the relevant period ended "on July 8, 2011, when [Farrington] rejected [FEMA's] offer to deploy her to a disaster." *Id.* at *3 (emphasis omitted). Moreover, according to FEMA, its $410,000 payment was based on an overestimate of the amount due and that, applying the "correct job title," Farrington was entitled to receive only $331,909.30. *Id.* Finally, FEMA maintained that, to the extent the EEOC concluded that Farrington was also entitled to interest, FEMA's "generous estimate already cover[ed]" that amount. *Id.*

The OFO agreed with Farrington that FEMA was obligated to provide back pay for a period extending beyond the AJ's decision, but agreed with FEMA that she was not entitled to back pay after July 11, 2011, when she declined FEMA's offer of redeployment. *Id.* at *4. That conclusion, however, did not settle matters. Observing that "the record . . . [did] not contain adequate evidence of [FEMA's] backpay calculations or of payments already provided to [Farrington]," the EEOC concluded that it could not determine whether FEMA had complied

with the AJ's order.  *Id*. at *3.  The EEOC, accordingly, ordered that FEMA (1) "conduct a

supplemental investigation with regard to the precise manner in which it calculated the backpay

it estimated was owed to [Farrington]" within 30 days and "modify such calculations to cover

pay lost through July 11, 2011, and provide additional payments as necessary;" and (2) submit

the calculations and a report of compliance within 30 days of completing the corrective action.

*Id*. at *4.  The EEOC also advised Farrington that, should FEMA fail to comply with the order,

Farrington could either petition the EEOC for enforcement or "file a civil action to enforce

compliance" with the order.  *Id.*

## C.    Procedural History

Farrington opted for the second of those options and commenced this action.  *See* Dkt. 1.

Although Farrington originally brought claims under Title VII, 42 U.S.C. § 2000e-16(c),

challenging some aspects of the July 2013 EEOC order, she amended her complaint to clarify

that she seeks only to enforce the July 2013 EEOC order—that is, "to compel agency action

unlawfully withheld or unreasonably delayed" pursuant to 5 U.S.C. § 706(1).  *See* Dkt. 13 at 1, 6

(Am. Compl. ¶¶ 1, 24).

FEMA moved to dismiss the amended complaint or, in the alternative, for summary

judgment, Dkt. 16, arguing that (1) the EEOC decision was not arbitrary or capricious, an abuse

of discretion, or otherwise not in accordance with law; (2) the Court lacked jurisdiction to

enforce the EEOC decision; and (3) on the merits, FEMA has complied with the EEOC's July

2013 EEOC order.  *See* Dkt. 16 at 16–29.  The Court was unpersuaded.  With respect to FEMA's

first argument—that the EEOC's decision was not arbitrary or capricious—the Court observed

that Farrington no longer challenges the EEOC's decision; rather, she now alleges only that

FEMA has failed to comply with that decision.  *Farrington*, 206 F. Supp. 3d at 641.  Second,

with respect to FEMA's contention that it had complied fully with the EEOC's order, thus mooting the case and depriving the Court of jurisdiction, the Court concluded that FEMA was putting the cart before the horse; the ultimate question raised by Farrington's lawsuit is whether FEMA has complied with the EEOC's order, and FEMA's merits defense did not deprive the Court of jurisdiction. *Id.* Finally, with respect to the merits of FEMA's defense—that it had already complied with the EEOC's order—the Court concluded that disputed issues of material fact precluded resolution of the case on the then-existing record. *Id.* at 642.

Following the Court's decision, FEMA returned to the drawing board and conducted a supplemental investigation regarding what, if any, back pay remained due. The resulting report contains two significant conclusions. First, FEMA concluded that Farrington was not entitled to *any* back pay relating to the Orlando Branch Chief position after her discharge. Dkt. 32-3 at 2–5. According to FEMA, its investigation showed that "the Branch Chief position was not filled by anybody up to the point that [Farrington] was offered the position in Region 6," and, as result, she "is not entitled to back pay for" her loss of employment in that capacity. *Id.* at 3. Second, FEMA concluded that Farrington was entitled to several months' back pay for her loss of employment in the Region 6 managerial position, but that her total loss amounted to only $47,640.84, including interest. *Id.* at 9. Most notably, FEMA determined that the period for which back pay was available ended in June 2006, when the agency replaced the DAE position that Farrington should have received with a Cadre On-Call Response Employee ("CORE") position, for which Farrington—like any other DAE or reservist—would have had to compete. Dkt. 32-3 at 7–8; *see also* Dkt. 21-2 at 1–2 (Supp. McGrane Decl. ¶¶ 5–9). According to counsel for FEMA, CORE employees, unlike DAE employees, "are deployed on a two[-]year basis," "work 40 hours" a week, and are "entitled to benefits." Oral Arg. Tr. (Rough at 28).

Based on its supplemental investigation, FEMA now asserts that Farrington has already received far more in back pay than she should have received; according to FEMA, she should have received only $47,640.84, as opposed to the $410,000 payment that FEMA made to her in 2012. Dkt. 32-1 at 4. Armed with this additional analysis, FEMA now seeks summary judgment in its favor on Farrington's APA claim. *See* Dkt. 32. FEMA also seeks to recover the $362,359.16 (plus interest) that it says it mistakenly paid Farrington and has asserted a counterclaim demanding return of the funds. *See* Dkt. 42 at 11–13.

Farrington contends that her position in the Orlando office was, at least as a practical matter, filled for several months, and, more significantly, that she is entitled to back pay for the period of time that the new CORE position was filled in Region 6. Farrington, accordingly, opposes FEMA's motion for summary judgment and cross-moves for summary judgment. *See* Dkt. 34. In her view, she should have received $1,040,460.46 in back pay, Dkt. 44 at 2, entitling her to a further payment of $630,460.46 ($1,040,460.46 minus $410,000). Farrington also moves to dismiss FEMA's counterclaim, arguing that FEMA waived that claim when it represented to the EEOC that the $410,000 "represent[ed] the *undisputed* amount of back pay owed," Dkt. 43-1 at 4 (quoting Dkt. 16-6 at 3), and that the EEOC's order embraced the $410,000 amount and directed that FEMA pay any *additional* amount due, *id.* at 5.

## II. ANALYSIS

As the D.C. Circuit has observed, "two types of civil actions may arise from Title VII's federal-sector administrative process." *Scott v. Johanns*, 409 F.3d 466, 469 (D.C. Cir. 2005). "First, complainants who prevail in the administrative process but who—for whatever reason—fail to receive their promised remedy, may sue to enforce the final administrative disposition." *Id.* "In such enforcement actions, the court reviews neither the discrimination finding nor the

remedy imposed, examining instead only whether the employing agency has complied with the administrative disposition." *Id.* Alternatively, "a complainant 'aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action' under Title VII." *Id.* (quoting 42 U.S.C. § 2000e-16(c)). Such an action is subject to *de novo* consideration by the district court, and thus the plaintiff bears the burden of establishing both liability and damages. *Farrington*, 206 F. Supp. 3d at 641.

Although it is now clear that this action is of the first type, what follows from that is unsettled. The parties' disagreement is not limited to what the EEOC's order means or to whether FEMA has issued a check for the specified amount or rehired Farrington. Rather, the parties disagree about facts of the type ordinarily encompassed within the determination or calculation of the proper remedy—and not simply the enforcement of that remedy. The Court will first address the factual dispute between the parties and will, then turn to how best to resolve that dispute.

**A.      Remaining Factual Disputes**

1.      *Orlando Branch Chief of Community Education and Outreach Position*

The EEOC's order provides that Farrington "is entitled to back pay for the duration of time that the Branch Chief position in Orlando was filled by anybody up to the point of time that she was offered the position in Region 6." Dkt. 16-1 at 55. FEMA argues that because no individual held the Branch Chief position in the Orlando office after Farrington's discharge, she is not entitled to back pay with respect to that position. Dkt. 32-1 at 5. For support, FEMA relies on the declaration of Daniel Piccaluga, an attorney employed by FEMA's Personnel Law Branch of the Office of the Chief Counsel. Dkt 32-3 at 13 (Piccaluga Decl. ¶ 1). Piccaluga attests that "there is no record in the Agency's possession that . . . any . . . individual was

deployed to the Orlando Joint Field Office as a Branch Chief of Community Education and Outreach or in any other position performing the duties of the Branch Chief position after Farrington's departure on May 16, 2005." *Id.* at 15 (Piccaluga Decl. ¶ 5).

Farrington counters that the duties of the Orlando Branch Supervisor position were performed after her discharge by an individual named Jeffrey Rowbatham. Even though Rowbatham held a different title in a nearby office, Farrington argues, he acted as her "replacement" during the time she would have held the Branch Chief position. Dkt. 34-1 at 8–9. She notes, for example, that Rowbatham's employee assignment history shows that he was deployed on June 4, 2005—shortly after Farrington's discharge—to fill the position of "XHazard Mitigation Planner" in FEMA's Long-Term Recovery office in Lake Mary, Florida, which is less than 20 miles from Orlando. Dkt. 21-1 at 4. The same assignment history shows that Rowbatham was then deployed to Farrington's former office in Orlando from July 12, 2005 through October 2, 2005, to work as an "XHazard Mitigation Planner" on Hurricane Dennis. *Id.* Rowbatham eventually obtained the title of "XHazard Mitigation Branch Director" in October 2005 in the Lake Mary office. *Id.* Farrington also relies on an organizational chart, which she contends is dated June 7, 2005. Dkt. 34-3 at 3. According to that chart, Rowbatham served at the relevant time (just days after Farrington was released) as "Outreach and Publishing" lead (a title that bears similarity to her prior title as Chief of Community Education and Outreach) under Janet Lamb (who was Farrington's prior supervisor). Dkt. 34-3 at 2. Finally, Farrington relies on an email Rowbatham sent to Farrington dated June 20, 2005, which she read into the record during her EEOC testimony. Dkt. 34-1 at 8. According to that testimony, Rowbatham wrote:

> [A]bout three weeks ago[,] I learned of your departure from the Orlando DFO and some of the circumstances surrounding it. Some time ago I heard that there was some sort of an investigation under[]way but did not know who was involved or much about why. I was saddened to hear what happened. A couple of weeks ago

*I was deployed to Orlando to help bring closure to some of the projects you and your staff had undertaken. I have some questions regarding the projects and would like an opportunity to discuss them with you.* May I call, and if so, when and where.

Dkt. 18-2 at 4 (emphasis added).

FEMA responds that because Rowbatham was "bring[ing] closure" to Farrington's projects, he was not her replacement and was "assist[ing] with the transition" after she was removed. Dkt. 38 at 5. FEMA also submits an email that states that "Jeff Rowbatham would assist with the transition" after Farrington's release. Dkt. 38-1 at 2. But FEMA has not submitted any other evidence that Rowbatham's responsibilities in Lake Mary and Orlando differed from those that Farrington performed before her release. And, even if Rowbatham was merely deployed to "bring closure" to some of Farrington's projects and "assist with the transition," that premise is not at odds with Farrington's conclusion that—at least for a few months—Rowbatham performed her job. As this Court previously concluded, "to the extent FEMA's position turns exclusively on the job title—regardless of overlap in the actual substance of the job—the Court is unpersuaded that the EEOC's decision can be given such a crabbed construction." *Farrington*, 206 F. Supp. 3d at 644.

A material dispute of fact, therefore, continues to exist regarding whether someone at least briefly filled the Orlando Branch Chief position that Farrington occupied before her release.

### 2. *Region 6 Managerial Position*

The lion's share of the amount in dispute turns on the question of whether the Region 6 managerial position that Farrington was offered, and then denied, continued to exist within the meaning of the EEOC order after June 2006, when FEMA replaced the DAE position with a CORE position. The EEOC order directs that Farrington "is entitled to back pay for the duration of time that the Branch Chief position was filled," and adds that, "[i]n the event that the title of this position changed due to a temporary office changing into a long[-]term recovery office, but

the duties remain significantly the same and [Farrington's replacement] continued to perform the work, then this shall be considered a position for which [Farrington] is entitled to back pay." Dkt. 16-1 at 55–56. At the same time, however, the EEOC order also recognizes that, "due to the nature of FEMA's business[,] its need for employees to perform disaster relief varies significantly from year to year and varies within FEMA's regions throughout the United States. Needs are depend[e]nt upon whether a disaster strikes and, if so, the extent of destruction." *Id.* at 56. As a result, the order concludes, "[t]he evidence is too speculative to allow for back pay after elimination of the position" described above. *Id.*

FEMA concedes that Farrington is owed back pay for the Region 6 position from September through June 2006 because other individuals—including Cheryl Ramsey, Ronald Holmes, and Rebecca Edwards—held the position during that time period. Dkt. 38 at 7–8. The sole remaining question—albeit a question with significant financial impact—is whether the replacement of Edwards with a CORE employee in June 2006 had the effect of eliminating the relevant position within the meaning of the EEOC order.

FEMA argues that "[t]he CORE conversion was more fundamental than the mere title change contemplated by the" EEOC. Dkt. 38 at 8. Most notably, even if Farrington had held the DAE position in June 2006, she would have been required to compete—like everyone else—for the CORE position. *Id.* at 8–9. At oral argument, counsel for FEMA further explained that CORE positions differed from DAE positions in terms of their permanence and benefits: DAE employees were deployed to locations for only 30 days and were not provided benefits, while CORE employees were employed at a particular office for two years and received benefits. Oral Arg. Tr. (Rough at 28). In further support of its contention that the Region 6 DAE position was abolished, FEMA relies on the Declaration of Nitja McGrane, a FEMA employee who served as

Mitigation Cadre Manager from 2006 to 2012. *See* Dkt. 32-3 at 6–7. McGrane attests that (1) "COREs replaced Ms. Edwards [Farrington's replacement] and other DAEs" in June 2006, Dkt. 16-9 at 3 (McGrane Decl. ¶ 11); (2) "FEMA Region 6 never intended to bring anyone else in for [the] HM CEO Group Supervisor position," *id.* (McGrane Decl. ¶ 13); and (3) no one else was deployed to "the HM CEO Group Supervisor position . . . [because] FEMA Region 6 did not have a position to fill, FEMA . . . was downsizing, and because COREs were being hired and trained to replace the DAEs and PFTs." *Id.* (McGrane Decl. ¶ 15).

Farrington does not dispute that a CORE position replaced the DAE position she would have held. But, in her view, that does not matter because a FEMA employee was performing the job responsibilities of the Region 6 position until at least July 2011 and the change in title did not alter that fact. Indeed, Farrington continues, FEMA's own witness attests that "COREs were being hired and trained to *replace* the DAEs," *id.* (McGrane Decl. ¶ 15) (emphasis added), and that "COREs *replaced* Ms. Edwards and other DAEs," *id.* (McGrane Decl. ¶ 11) (emphasis added). For further support, Farrington again relies on an organizational chart, this time from the Louisiana Transitional Recovery Office dated December 29, 2010. Dkt. 34-1 at 13. That chart indicates that Ronnie Simpson held the title of "CEO Group Supervisor" of Region 6, Dkt. 18-5 at 2, which Farrington contends mirrors the position that she was offered and then denied: "HM CEO Group Supervisor in FEMA Region 6," Dkt. 16-9 at 2 (McGrane Decl. ¶ 6). Finally, Farrington contends that nothing in the EEOC's order turns on the distinction between DAE and CORE positions and that, even if she would have been required to compete, FEMA has not shown that she was unqualified or would not have been selected. Dkt. 34-1 at 13–14 & n.2.

The Court, once again, concludes that a genuine dispute of material fact exists. The record does not clearly reflect whether, or to what extent, the responsibilities of the Region 6

position remained the same after it changed from a DAE to a CORE position. At least on the present record, moreover, the Court is unconvinced that the change from a DAE to a CORE position was itself sufficient to end Farrington's entitlement to back pay. *See Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1119 (D.C. Cir. 1999) ("[C]ourt[s] must, 'as nearly as possible, recreate the conditions and relationships that would have been, had there been no unlawful discrimination.'" (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 372 (1977)). In addition to the requirement that employees compete for CORE positions, FEMA has identified two principal differences between DAE and CORE positions. First, CORE positions, unlike DAE positions, confer benefits on the employee. The EEOC order, however, says nothing about benefits but, rather, asks whether "the duties remained significantly the same." Dkt. 16-1 at 56. Second, CORE positions were for a period of two years, while DAE positions were for intermittent periods of 30 days. Oral Arg. Tr. (Rough at 28). But the EEOC order seems to contemplate such a shift and makes clear that Farrington's entitlement to back pay continued even if the position changed "due to a temporary office changing into a long term recovery office." Dkt. 16-1 at 56.

What matters for purposes of the EEOC's order is whether it is possible to trace a continuous line of tenure in the position, which might bear different titles over time and which might be held in a "temporary office" or in a "long term recovery office" but which carries "significantly the same" duties as the position held by the individual who was hired in Farrington's stead and his replacements. Based on the current record, the Court cannot resolve that issue as a matter of law.

**B.     Relevant Statutory Provisions**

There is little guidance in the case law about what to do in the face of a genuine dispute of material fact in a Title VII enforcement action.  The Court, accordingly, issued an order directing that the parties submit supplemental briefs addressing how factual disputes should be resolved in this context.  Minute Order (Jan. 31, 2018).  In response, Farrington takes the position that the Court should "engage in factfinding" and that "the burden of limiting the back pay remedy rests with the agency."  Dkt. 51 at 1, 8.  FEMA, in contrast, argues that "the Court should not make findings of fact but should review the record to determine whether, as a matter of law, . . . Farrington has met her burden to show that FEMA has a 'clear' and 'indisputable' obligation to pay her more money than it did."  Dkt. 52 at 2.  The Court concludes that neither position reflects the correct standard.

As an initial matter, the Court is unpersuaded by Farrington's contention that the Court can, and should, resolve any factual disputes necessary to enforce the EEOC's order that FEMA provide her with back pay.  At oral argument, Farrington's counsel argued that "this [action] was brought under Title VII," thus providing the Court with broad authority to resolve any factual disputes relating to damages.  Oral Arg. Tr. (Rough at 12).  She endeavored to support this assertion, moreover, by pointing to the governing EEOC regulation, which provides in relevant part:

> Where the Commission has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the *right to file a civil action for enforcement of the decision pursuant to Title VII*, the ADEA, the Equal Pay Act or the Rehabilitation Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. 701 et seq., and the mandamus statute, 28 U.S.C. [§] 1361, or to commence de novo proceedings pursuant to the appropriate statutes.

29 C.F.R. § 1614.503(g) (emphasis added).  In Farrington's view, this regulation authorizes

EEOC complainants "to file a civil action for enforcement . . . pursuant to Title VII."  That

theory, however, suffers from a number of flaws.

First, and most obviously, Farrington has not brought suit under Title VII; rather, her

amended complaint "seeks judicial review pursuant to the Administrative Procedure Act."  Dkt.

13 at 1 (Am. Compl. ¶ 1).  Second, even putting that fact aside, the EEOC regulation does not

authorize EEOC complainants to bring enforcement actions under Title VII; rather, it authorizes

complainants who have obtained favorable administrative "decision[s] pursuant to Title VII, the

ADEA, the Equal Pay Act[,] or the Rehabilitation Act" to bring suit against a recalcitrant agency

"*pursuant to the Administrative Procedure Act . . . and the mandamus statute.*"  29 C.F.R.

§ 1614.503(g) (emphasis added).  Third, and finally, even if construed in the manner Farrington

suggests, the regulation could not create a federal cause of action; rather, it is up to Congress to

create federal causes of action, *see Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate

rights of action to enforce federal law must be created by Congress."), and the Court's remedial

authority under Title VII is limited to cases in which "*the court finds* that the respondent has

intentionally engaged in or is intentionally engaging in an unlawful employment practice," 42

U.S.C. § 2000e-5(g)(1) (emphasis added); *see also Scott*, 409 F.3d at 470 ("[I]n a federal-sector

Title VII case, any remedial order must rest on judicial findings of liability, and nothing in the

statute's language suggests that such findings are unnecessary in cases where a final

administrative disposition has already found discrimination and awarded relief.").

This, of course, is not to say that an EEOC complainant is without a remedy when an

agency fails to comply with an EEOC remedial order.  *Scott*, 409 F.3d at 469 ("[C]omplainants

who prevail in the administrative process but who—for whatever reason—fail to receive their

promised remedy, may sue to enforce the final administrative disposition."). That remedy, however, is found—as the EEOC regulation suggests—in the APA and the mandamus statute. Title VII authorizes the EEOC to enforce Title VII's anti-discrimination and anti-retaliation principles against federal-sector employers and, among other things, authorizes the EEOC to order that agencies provide complainants with "back pay" where appropriate. 42 U.S.C. § 2000e-16(a), (b). Title VII further provides, moreover, that "[t]he head of each . . . department [or] agency . . . *shall* comply with such . . . orders." *Id.* § 2000e-16(b) (emphasis added). That obligation is not merely precatory. Accordingly, where the EEOC has issued a final order, and the agency "withholds" the required relief, the non-compliant agency is subject to suit under the APA, 5 U.S.C. § 706(1), and, in extraordinary circumstances, under the mandamus statute, 28 U.S.C. § 1361, *see Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380 (2004).

Although the Court, accordingly, agrees with FEMA that the present action is governed by the APA, it is not persuaded that the proper standard of review is as deferential as FEMA contends.[1] In FEMA's view, the Court need not resolve the factual disputes between the parties, and can resolve the case on summary judgment, because Farrington has failed to carry her burden of showing that she has "a clear and indisputable right to relief" and that FEMA is

---

[1] The fact that Farrington seeks to compel FEMA to comply with a monetary award also raises the question of whether a waiver of sovereign immunity is applicable. Arguably, the waiver of sovereign immunity found in Title VII does not provide the Court with jurisdiction because, as explained above, Farrington has not brought suit under Title VII. But, even if that waiver is unavailable, and even though the APA waiver of sovereign immunity does not "include back pay," *Hubbard v. Adm'r, EPA*, 982 F.2d 531, 539 (D.C. Cir. 1992), the relief sought here is not an award of "money damages," 5 U.S.C. § 702, but rather an injunction compelling enforcement of a mandate that the EEOC was indisputably authorized to issue, *see Bowen v. Massachusetts*, 487 U.S. 879, 900 (1988); *see also Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–65 (1999) (explaining that the APA permits awards of "specific relief").

18

"violating a clear duty to act." Dkt. 52 at 5. In short, under FEMA's view of the law, close or reasonably disputed factual questions must be resolved in favor of the agency in an action to enforce an EEOC remedial order. That contention, however, is hard to square with the broad, remedial goals of Title VII, *see Cook v. Boorstin*, 763 F.2d 1462, 1469 (D.C. Cir. 1985), and it finds little or no support in the traditional rationales for according agencies deference in APA actions, *see e.g.*, *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("[C]onsiderable weight should be accorded to an [agency's] construction of a statutory scheme it is entrusted to administer . . . ."); *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006) ("[C]ourt[s] routinely defer[] to administrative agencies on matters relating to their areas of technical expertise."). Moreover, it is at odds with the scheme that Congress created for enforcing Title VII and other anti-discrimination laws against federal agencies. Congress vested the EEOC with authority to issue orders binding on other agencies presumably in order to avoid the type of self-policing of administrative decisions that FEMA would have the Court embrace.

The Court is therefore left with a factual dispute that cannot be resolved on the existing record, and, for the reasons explained above, it must deny both FEMA's and Farrington's motions for summary judgment. The question, then, is how best to bring this matter to a "just, speedy, and inexpensive" conclusion. Fed. R. Civ. P. 1. One possibility is that the Court remand the action to FEMA for further development of the record. Given the history of this case, however, it is far from clear that such an approach would lead to a prompt resolution. At oral argument, the Court raised another possible avenue forward, which neither party rejected: staying the action to provide Farrington with the opportunity to return to the EEOC to resolve the factual dispute. That approach has the virtue of leaving the unresolved factual issues to the

adjudicatory agency, and it is consistent with the EEOC regulations, which contemplate that "the Commission" should make a determination about whether "an agency is" in compliance with the agency's order before judicial review is sought. 29 C.F.R. § 1614.503(g). If this approach proves unsuccessful or is otherwise unworkable, the Court will lift the stay and will consider other alternatives.

## C. Motion to Dismiss

As discussed, FEMA has also filed a counterclaim against Farrington, seeking to recoup its alleged overpayments. This claim raises the same disputed issues of material fact discussed above. *See* Dkt. 42. Farrington argues, however, that the Court should dismiss the counterclaim without reaching those disputed issues for two reasons. First, she argues that FEMA waived any claim that it owes her less than $410,000 in back pay when it represented to the EEOC that the $410,000 figure was the "undisputed" amount of back pay owed for the period of May 27, 2005 (the date of Farrington's discharge) through September 26, 2008 (the date of the AJ's order). Dkt. 43-1 at 4–5. Second, she argues that the July 2013 EEOC order precludes FEMA's counterclaim because it directs FEMA to "modify [its back pay] calculations to cover [Farrington's] pay lost through July 11, 2011, and provide *additional* payments as necessary," *Farrington*, 2013 WL 3865033 at *4 (emphasis added), and therefore, the order "does not permit FEMA to recoup any of th[e] [paid] funds from Ms. Farrington," Dkt. 43-1 at 5.

At least on the present record, the Court is unconvinced. Farrington's motion to dismiss consists of two paragraphs of discussion in which she offers no legal analysis and fails to cite a single case or statutory provision suggesting that the government has waived or is otherwise barred from recouping any overpayment it may have made. *See id.* at 4–5. Under the common law theory of "recoupment of public funds paid by mistake," the government may "recover funds

20

which its agents have wrongfully, erroneously, or illegally paid." *Alsco-Harvard Fraud Litig.*, 523 F. Supp. 790, 797 (D.D.C. 1981) (quoting *United States v. Wurts*, 303 U.S. 414, 415 (1938)). Absent some legal authority that would permit the Court to set aside such a claim, the Court cannot grant Farrington's motion to dismiss. Accordingly, Farrington's motion to dismiss is denied without prejudice.

## CONCLUSION

For the forgoing reasons, it is hereby **ORDERED** that FEMA's motion for summary judgment, Dkt. 32, is **DENIED**; it is further

**ORDERED** that Farrington's motion for summary judgment, Dkt. 35, is **DENIED**; it is further

**ORDERED** that Farrington's motion to dismiss FEMA's counterclaim, Dkt. 43, is **DENIED** without prejudice; and it is further

**ORDERED** that the case is **STAYED** in order to provide Farrington an opportunity to seek a determination from the EEOC about the periods of time for which back pay is due.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 1, 2018